UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KYLE RALEIGH,<br>               Plaintiff,<br><br>v.<br><br>DONNA M. BARIBAULT, PETER A. BARIBAULT, AND MICHAEL P. DURVIN,<br>               Defendants. | 3:22-CV-01069-JAM<br><br><br><br>March 9, 2023 |

**SECOND AMENDED COMPLAINT**
(leave to amend granted 2/28/23 [Doc. No. 54])

The plaintiff, Kyle Raleigh, alleges the following against the defendants, Donna M. Baribault, Peter A. Baribault, and Michael P. Durvin:

**Jurisdiction**

1. The plaintiff is a citizen of the state of Connecticut and resides at 437 North Canterbury Road in Canterbury, Connecticut.

2. The defendant Donna M. Baribault (Donna) is a citizen of the state of Rhode Island and resides at 32 Kennedy Road in Foster, Rhode Island.

3. The defendant Peter A. Baribault (Peter) is a citizen of the state of Rhode Island and resides at 18 Jennifer Drive in Bristol, Rhode Island.

4. The defendant Michael P. Durvin is a citizen of the state of Rhode Island and resides at 1165 Tarkiln Road in Burrillville, Rhode Island.

5. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. This court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 (a)(1).

**Count One:** Action of Replevin pursuant to Connecticut General Statutes § 52-515
(against Donna and Durvin)

7. The plaintiff holds title in fee simple to certain real property located at 437 North Canterbury Road in Canterbury, Connecticut (premises), and is the assignee of his predecessor in title, Wilmington Savings Fund Society, FSB, as trustee for BCAT 2017-19TT (Wilmington).

8. Located on the premises is an eighteenth-century dwelling built by Revolutionary War captain Asa Bacon and known as the Asa Bacon House (house). Several historic barns and other outbuildings are also located on the premises.

9. According to an historic resource survey sponsored by the Canterbury Historical Society and the Connecticut Historical Commission, the house is "an exceptionally well-preserved example of traditional Colonial architecture" and appears to be individually eligible for inclusion on the National Register of Historic Places.

10. Donna and Peter (collectively, the Baribaults) held fee simple title to the premises from 2007 until December 11, 2018.

11. Durvin is, and at all relevant times was, Donna's boyfriend.

12. On October 22, 2018, in *Bank of America, N.A.* v. *Baribault*, Superior Court, judicial district of Windham, Docket No. CV-17-6012261-S, a judgment of strict foreclosure with respect to the premises was rendered against the Baribaults in favor of Wilmington.

13. On December 12, 2018, after all eligible parties had failed to exercise their rights to redeem the premises, title to the premises became absolute in Wilmington.

14. After the vesting of title to the premises in Wilmington, Donna wrongfully continued to remain in possession of the premises for over three months, during which time she and Durvin severed and removed the following historic fixtures from the premises, the replacement cost of which is in excess of $50,000:

2

a. Six pairs of window sashes, more specifically:

   i. Four pairs of nine-over-six sashes, from the attic.

   ii. One pair of six-over-six sashes, from the back of the house on the second floor.

   iii. One pair of eight-over-eight sashes, from the back of the house on the second floor.

b. Fourteen interior doors, more specifically:

   i. One four-panel door with attached H-L hinges, from the east side of the kitchen.

   ii. One four-panel door with attached H-L hinges, from the east side of the dining room.

   iii. One six-panel (one side)/four-panel (reverse side) door with attached H-L hinges, from the north parlor.

   iv. One six-panel (one side)/four-panel (reverse side) door with attached H-L hinges, from the north side of the south parlor.

   v. One six-panel (one side)/four-panel (reverse side) door with attached H-L hinges, from the east side of the south parlor.

   vi. One four-panel door, from the back of the first-floor central hallway.

   vii. One door from the first-floor bathroom.

   viii. One four-panel door with attached H-L hinges, from the second-floor bathroom.

   ix. One door leading from the northeast bedroom to the second-floor bathroom.

- x. One four-panel door with attached H-L hinges, from the north side of the southeast bedroom.
- xi. One four-panel door with attached H-L hinges, from the west side of the southeast bedroom.
- xii. One four-panel door with attached H-L hinges, from the northwest bedroom.
- xiii. One four-panel door, from the attic servants' quarters.
- xiv. One door with attached hinges, from the second-floor crawlspace.

c. Eleven closet/cupboard doors, more specifically:
- i. Two four-panel cupboard doors with attached H hinges from the mudroom.
- ii. One door with attached H hinges from the built-in cupboard in the first-floor bathroom.
- iii. One two-panel closet door with attached H-L hinges, from the dining room.
- iv. One two-panel closet door with attached H-L hinges, from the north parlor.
- v. Two doors, each with attached H hinges, from the built-in cupboard in the kitchen.
- vi. One six-panel closet door with attached H-L hinges, from the first-floor central hallway.
- vii. One closet door with attached H-L hinges, from the first-floor side hallway.
- viii. One closet door with attached H-L hinges, from the northeast bedroom.
- ix. One closet door with attached H-L hinges, from the northwest bedroom.

d. Eighty-five pieces of woodwork, more specifically:
- i. Approximately thirty-eight pieces of clapboard (providing coverage for 54 square feet of wall space) from the north and west walls of the mudroom.

      ii. One piece of molding from the doorway leading from the first-floor central hallway to the mudroom.

      iii. Entire exterior casing (three pieces total) from the closet doorway in the first-floor side hallway.

      iv. Entire frame—interior and exterior casings, both jambs, and the header (nine pieces total)—from the second-floor bathroom doorway.

      v. Header and one jamb from the northeast bedroom doorway.

      vi. One jamb from the northeast bedroom closet doorway.

      vii. Entire door frame—interior and exterior casings, both jambs, and the header (nine pieces total)—from the doorway leading from the northeast bedroom to the second-floor bathroom.

      viii. Entire interior casing and both jambs (five pieces total) from the north doorway of the southeast bedroom.

      ix. Entire interior casing and both jambs (five pieces total) from the west doorway of the southeast bedroom.

      x. One jamb from the doorway leading from the southeast bedroom to the attic.

      xi. Right side of the interior casing, one jamb, and the header (three pieces total) from the doorway of the northwest bedroom.

      xii. Entire exterior casing and both jambs (five pieces total) from the closet doorway of the northwest bedroom.

      xiii. Entire exterior casing (three pieces total) from the second-floor crawlspace doorway.

  e. Eight pieces of hardware from the front-entry door, more specifically:

- i. One security bar set, consisting of two metal brackets and a wooden board (three pieces total).
- ii. One mechanical doorbell, consisting of two pieces.
- iii. One vertical wrought iron slide bolt lock.
- iv. One brass staple (part of door latch assembly).
- v. One brass keeper (part of door latch assembly), bottom portion broken off.

f. Eleven pieces of hardware from the side-entry door, more specifically:
- i. One security bar set, consisting of two metal brackets and a wooden board (three pieces total).
- ii. One vertical wrought iron slide bolt lock and keeper (two pieces).
- iii. One horizontal iron slide bolt lock and keeper (two pieces).
- iv. One latch bar (part of door latch assembly).
- v. One staple (part of door latch assembly).
- vi. One keeper (part of door latch assembly).
- vii. Exterior door handle.

g. Twenty-nine pieces of miscellaneous hardware, more specifically:
- i. Latch bar and keeper (two pieces) (parts of door latch assembly) from the rear entry door.
- ii. Entire door latch assembly—handle, lift, latch bar, staple, and keeper (five pieces total)—from the north door of the kitchen.
- iii. Handle, lift, latch bar, and staple (four pieces total) from the west door of the kitchen.

      iv. Small door latch and keeper (two pieces total) from the doorway leading from the kitchen to the basement.

      v. One small iron staple from the built-in kitchen cupboard.

      vi. One iron hook from the ceiling of the dining room closet.

      vii. One rim lock and keeper (two pieces) from the north parlor door.

      viii. Wooden knob and nail (two pieces), for securing the closet door in the first-floor central hallway.

      ix. Three iron hooks from the ceiling of the second-floor bathroom.

      x. One keeper from the doorway leading from the southeast bedroom to the attic.

      xi. One rim lock and keeper (two pieces) from the southeast bedroom closet door.

      xii. Four cast iron claw feet from the upstairs bathtub.

h. Seven doors from the large barn, more specifically:

      i. One interior door from the west side of the barn.

      ii. Three stall doors.

      iii. Three cupboard doors.

i. One interior door from the small barn.

j. One door from the outhouse.

k. Approximately twenty-five sets of twelve-over-twelve window sashes original to the house and stored in the outbuildings.

l. Approximately 1100 square feet of wood flooring original to the house and stored in the outbuildings.

      m.   Commemorative plaque from the front of the house reading "1783."

      n.   Several sets of fireplace tools and hardware.

      o.   Hardware from the doors of the carriage house.

15. In severing and removing the historic fixtures from the premises, Donna and Durvin caused over $10,000 in physical damage to the premises, which will have to be repaired before such fixtures or replacements can be reinstalled. Moreover, the labor necessary to reinstall such fixtures or replacements will cost in excess of $5,000.

16. Donna and Durvin had no legal right to sever or remove the historic fixtures from the premises and were not authorized to do so.

17. Donna is employed as a branch manager and assistant vice president at Citizens Bank and has more than thirty-five years of experience in retail banking and investment, including lending. As such, Donna knew or reasonably should have known that severance and removal of the historic fixtures from the premises after the vesting of title to the premises in Wilmington was wrongful and violated the criminal law.

18. The historic fixtures, having been severed and removed from the underlying realty, constitute goods or chattels.

19. Because Wilmington had title to the premises when Donna and Durvin severed and removed the historic fixtures therefrom, Wilmington has a property interest in said fixtures with a right to immediate possession thereof.

20. Donna and Durvin have wrongfully detained the historic fixtures.

21. Wilmington sold the premises to the plaintiff in July of 2019. Subsequently, by written instrument executed on August 17, 2022, Wilmington assigned to the plaintiff "all its right, title, and interest in all causes of action arising out of the removal of any fixtures and/or

personal property from the premises, including, but not limited to, claims for statutory theft, conversion, breach of contract, unjust enrichment, replevin, and tortious waste." See ex. A (copy of assignment). Given that Wilmington has a cause of action of replevin arising from Donna and Durvin's severance and removal of the historic fixtures from the premises, the plaintiff is the actual bona fide owner of said chose in action by virtue of the assignment, and, therefore, pursuant to Connecticut General Statutes § 52-118, he may sue thereon in his own name.

**Count Two:** Common-Law Conversion (against Donna and Durvin)

22. The plaintiff incorporates the allegations in paragraphs 7 through 15 as if fully set forth herein.

23. After the vesting of title to the premises in Wilmington, Donna and Durvin also severed and removed the following modern fixtures from the premises, the replacement cost of which exceeds $30,000:

    a. All fixtures from the kitchen, including:

        i. All appliances—stove, refrigerator, dishwasher, microwave;

        ii. All cabinets and countertops;

        iii. Sink and faucet;

        iv. Nine electrical outlets/switches; and

        v. Fireplace mantle.

    b. All fixtures from the first-floor bathroom, including:

        i. Shower base, walls, and door; and shower head and faucet;

        ii. Toilet;

        iii. Sink and faucet;

9

        iv. All cabinets and countertops;

        v. Ceiling ventilation fan; and

        vi. Two electrical outlets.

    c. Clothes washer and dryer.

    d. Utility sink with faucet.

    e. All second-floor baseboard heaters.

    f. Various fixtures from the second-floor bathroom, including:

        i. Sink and faucet;

        ii. Bathtub faucet;

        iii. Toilet; and

        iv. All cabinets and countertops.

    g. Nineteen interior light fixtures and five exterior light fixtures.

    h. Eight pairs of reproduction window sashes.

    i. Interior casings and trim from eight window frames.

    j. Outdoor wood-burning furnace.

    k. Driveway gate.

    l. Several horse fences.

24. The cost of labor to install replacement modern fixtures is in excess of $10,000.

25. Because Wilmington had title to the premises when Donna and Durvin severed and removed the historic and modern fixtures (fixtures) therefrom, such fixtures, upon their severance, became the personal property of Wilmington.

26. Donna and Durvin had no legal right to sever or remove the fixtures from the premises and were not authorized to do so.

27. At the time Donna and Durvin severed and removed the fixtures from the premises, they were aware that title to the premises had already vested in Wilmington and that all of the fixtures actually or constructively annexed to the premises at the time of such vesting were likewise the property of Wilmington. As such, Donna and Durvin knew or reasonably should have known that severance and removal of the fixtures from the premises after the vesting of title to the premises in Wilmington was wrongful and violated the criminal law, particularly in light of the fact that Donna is employed as a branch manager and assistant vice president at Citizens Bank and has more than thirty-five years of experience in retail banking and investment, including lending.

28. Donna and Durvin, by severing and removing the fixtures from the premises without authorization after title to the premises had vested in Wilmington, assumed and exercised ownership over property belonging to Wilmington, to the exclusion of Wilmington's rights.

29. Donna and Durvin's conduct has harmed Wilmington in that:

    a. It has been deprived of the use and enjoyment of the fixtures, the replacement cost of which is in excess of $80,000; and

    b. Donna and Durvin caused more than $10,000 in physical damage to the premises in the course of severing the fixtures, and the cost of labor necessary to install replacement fixtures is in excess of $15,000.

30. Wilmington sold the premises to the plaintiff in July of 2019. Subsequently, by written instrument executed on August 17, 2022, Wilmington assigned to the plaintiff "all its right, title, and interest in all causes of action arising out of the removal of any fixtures and/or personal property from the premises, including, but not limited to, claims for statutory theft, conversion, breach of contract, unjust enrichment, replevin, and tortious waste." See ex. A

(copy of assignment). Given that Wilmington has a cause of action for conversion arising from Donna and Durvin's severance and removal of the fixtures from the premises, the plaintiff is the actual bona fide owner of said chose in action by virtue of the assignment, and, therefore, pursuant to Connecticut General Statutes § 52-118, he may sue thereon in his own name.

**Count Three:** Statutory Theft pursuant to Connecticut General Statutes §§ 52-564 and 53a-119 (against Donna and Durvin)

31. The plaintiff incorporates the allegations in paragraphs 7 through 15 and 23 through 27 as if fully set forth herein.

32. Despite knowing that they had no interest in the premises or any fixtures annexed thereto, Donna and Durvin purposefully severed and removed the fixtures from the premises. They did so out of spite against Wilmington for having foreclosed upon the premises and with the purpose of retaining the fixtures for their own use and/or selling the fixtures for profit. In so doing, Donna and Durvin intended to deprive Wilmington of said fixtures and/or to appropriate the same to themselves or a third person.

33. The plaintiff incorporates the allegations in paragraph 29 as if fully set forth herein.

34. Wilmington sold the premises to the plaintiff in July of 2019. Subsequently, by written instrument executed on August 17, 2022, Wilmington assigned to the plaintiff "all its right, title, and interest in all causes of action arising out of the removal of any fixtures and/or personal property from the premises, including, but not limited to, claims for statutory theft, conversion, breach of contract, unjust enrichment, replevin, and tortious waste." See ex. A (copy of assignment). Given that Wilmington has a cause of action for statutory theft arising from Donna and Durvin's severance and removal of the fixtures from the premises, the plaintiff is the actual bona fide owner of said chose in action by virtue of the assignment,

and, therefore, pursuant to Connecticut General Statutes § 52-118, he may sue thereon in his own name.

**Count Four:** Tortious Waste (against Donna and Durvin)

35. The plaintiff incorporates the allegations in paragraphs 7 through 11 as if fully set forth herein.

36. As security for a promissory note in the principal sum of $294,250, the Baribaults mortgaged the premises to Bank of America, N.A., via an open-ended mortgage deed (mortgage deed). The Baribaults executed the mortgage deed in Canterbury, Connecticut, on March 19, 2007, and said instrument was recorded the following day in volume 188, page 43, of the land records of the town of Canterbury, Connecticut. Pursuant to paragraph 7 (waste provision) of the uniform covenants contained in the mortgage deed, the Baribaults agreed to "not destroy, damage or impair the [premises], allow the [premises] to deteriorate or commit waste on the [premises]. . . ." Pursuant to paragraph 13, the Baribaults further "covenant[ed] and agree[d] that [their] obligations and liabilities shall be joint and several." See ex. B (copy of mortgage deed).

37. After Bank of America, N.A., commenced foreclosure proceedings against the Baribaults in Bank of America, N.A. v. Baribault, Superior Court, judicial district of Windham, Docket No. CV-17-6012261-S, it assigned the mortgage to Wilmington, which was thereafter substituted as plaintiff in the foreclosure action.

38. In rendering a judgment of strict foreclosure on October 22, 2018, the trial court found that the fair market value of the premises was $300,000 on the basis of an as-is appraisal completed in September of 2018 after a visual inspection of the exterior of the premises.

39. After title to the premises vested absolutely in Wilmington on December 12, 2018, Donna prevented Wilmington and/or its agents from inspecting the interior of the dwelling and outbuildings until shortly before she vacated the premises several months later.

40. By the time Wilmington gained possession of the premises in March of 2019, Donna and Durvin had severed and removed from the premises the historic and modern fixtures (fixtures) as alleged in paragraphs 14 and 23 and incorporated herein and, in the process, had caused damages as alleged in paragraphs 15 and 24 and incorporated herein. To the extent that Donna and Durvin did so before title to the premises vested absolutely in Wilmington, their conduct constituted tortious waste in that such conduct was unauthorized and unreasonable and caused physical damage to the premises and/or changes to the character of the premises in a manner that significantly reduced the value thereof.

41. To the extent that Durvin engaged in such conduct with Donna's consent, he did so with knowledge of the existence of the mortgage.

42. Wilmington subsequently sold the premises to the plaintiff for $184,500, which price was, in substantial part, a reflection of Donna and Durvin's aforementioned waste.

43. Donna and Durvin's conduct thus reduced the value of the premises by over $105,000, to the detriment of Wilmington's security interest therein.

44. By written instrument executed on August 17, 2022, Wilmington assigned to the plaintiff "all its right, title, and interest in all causes of action arising out of the removal of any fixtures and/or personal property from the premises, including, but not limited to, claims for statutory theft, conversion, breach of contract, unjust enrichment, replevin, and tortious waste." See ex. A (copy of assignment). Given that Wilmington has a cause of action sounding in tortious waste arising from Donna and Durvin's wrongful severance and

removal of the fixtures from the premises, the plaintiff is the actual bona fide owner of said chose in action, and, therefore, pursuant to Connecticut General Statutes § 52-118, he may sue thereon in his own name.

**Count Five:** Unjust Enrichment (against Donna and Durvin)

45. The plaintiff incorporates the allegations in paragraphs 7 through 15, 23 through 29, and 36 through 43 as if full set forth herein.

46. By severing and removing the fixtures from the premises and appropriating the same to their own use or to the use of others, Donna and Durvin were benefited.

47. Donna and Durvin did not pay for such benefits.

48. Because Donna and Durvin lacked title to the fixtures and/or were not authorized to commit waste, their failure to pay for the fixtures was unjust.

49. Given Wilmington's ownership interest in the fixtures and/or security interest in the premises, Donna and Durvin's failure to pay for the fixtures was to Wilmington's detriment.

50. Wilmington sold the premises to the plaintiff in July of 2019. Subsequently, by written instrument executed on August 17, 2022, Wilmington assigned to the plaintiff "all its right, title, and interest in all causes of action arising out of the removal of any fixtures and/or personal property from the premises, including, but not limited to, claims for statutory theft, conversion, breach of contract, unjust enrichment, replevin, and tortious waste." See ex. A (copy of assignment). Given that Wilmington has a cause of action for unjust enrichment arising from Donna and Durvin's wrongful severance and removal of the fixtures from the premises, the plaintiff is the actual bona fide owner of said chose in action by virtue of the assignment, and, therefore, pursuant to Connecticut General Statutes § 52-118, he may sue thereon in his own name.

**Count Six:** Breach of Contract (against the Baribaults)

51. The plaintiff incorporates the allegations in paragraphs 7 through 11 and 36 through 39 as if fully set forth herein.

52. On January 31, 2019, Wilmington, through its authorized agent Selene Finance, LP (Selene), mailed a proposed "occupant move-out agreement and release" (move-out agreement) to Donna in Connecticut to offer her $4500 in relocation assistance and a waiver of Wilmington's right to post-foreclosure use and occupancy damages, in exchange for Donna voluntarily vacating the premises and releasing Wilmington of any claims of any kind that she may have against it.

53. After discussions with Wilmington's Connecticut-based realtor, David Izzo, Donna executed the move-out agreement on February 28, 2019. See ex. C (copy of move-out agreement).

54. By the time Izzo conducted an inspection of the premises pursuant to the move-out agreement in early March of 2019, Donna and Durvin had severed and removed from the premises the historic and modern fixtures (fixtures) as alleged in paragraphs 14 and 23 and incorporated herein and, in the process, had caused damages as alleged in paragraphs 15 and 24 and incorporated herein. To the extent that Donna and Durvin severed and removed such fixtures before title to the premises vested absolutely in Wilmington, Donna breached the waste provision of the mortgage deed, and, accordingly, both she and Peter are jointly and severally liable for such waste.

55. Wilmington and/or its agents and assigns fully performed their obligations under the mortgage deed.

56. Wilmington subsequently sold the premises to the plaintiff for $184,500, which price was, in substantial part, a reflection of the aforementioned waste.

57. The Baribaults' breach of the mortgage deed harmed Wilmington in that, as a result of the waste, the value of the premises was reduced by over $105,000.

58. By written instrument executed on August 17, 2022, Wilmington assigned to the plaintiff "all its right, title, and interest in all causes of action arising out of the removal of any fixtures and/or personal property from the premises, including, but not limited to, claims for statutory theft, conversion, breach of contract, unjust enrichment, replevin, and tortious waste." See ex. A (copy of assignment). Given that Wilmington has a cause of action for breach of contract arising from the wrongful severance and removal of the fixtures from the premises, the plaintiff is the actual bona fide owner of said chose in action, and, therefore, pursuant to Connecticut General Statutes § 52-118, he may sue thereon in his own name.

**Demand for Relief**

WHEREFORE, the plaintiff respectfully requests the following relief:

1. As to count one, judgment against Donna and Durvin for immediate possession of the historic fixtures and compensatory damages in excess of $15,000;

2. As to count two, judgment against Donna and Durvin and compensatory damages in excess of $105,000;

3. As to count three, judgment against Donna and Durvin and treble damages in excess of $315,000 pursuant to Connecticut General Statutes § 52-564;

4. As to count four, judgment against Donna and Durvin and compensatory damages in excess of $105,000;

5. As to count five, judgment against Donna and Durvin and compensatory damages in excess of $105,000;

6. As to count six, judgment against the Baribaults and compensatory damages in excess of $105,000.

7. Punitive damages in excess of $20,000;

8. Interest pursuant to Connecticut General Statutes § 37-3a; and

9. Such further legal and equitable relief that the court may deem appropriate.

Dated at Hartford, Connecticut this 9th day of March, 2023

/s/ Kyle Raleigh
Federal Bar No. ct31413
437 N. Canterbury Rd.
Canterbury, CT 06331
ksraleigh@me.com
(860) 271-5827