UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x

KYLE RALEIGH, :
　 :
　　　　　　　　　　　　Plaintiff, :
　 :
　　-against- :
　 :
DONNA M. BARIBAULT and MICHAEL P.:
DURVIN, :
　 :
　　　　　　　　　　　　Defendants. :

------------------------------------------------------------- x

**MEMORANDUM &
ORDER GRANTING IN
PART AND DENYING IN
PART PLAINTIFF'S
MOTION FOR
CONTEMPT AND FOR
SANCTIONS**

3:22-CV-01069 (VDO)

**VERNON D. OLIVER**, United States District Judge:

　　　Plaintiff brings a claim of replevin against the defendants for the allegedly unauthorized removal of historical fixtures from a historically significant property owned by Plaintiff. Subsequently, Plaintiff moved for a prejudgment remedy to gain possession of the fixtures, which was resolved by stipulation between the parties wherein defendant Donna Baribault ("Defendant" or "Baribault") agreed to replevy certain fixtures enumerated therein. This motion arises out of Baribault's failure to comply with the Court's consent order granting by agreement Plaintiff's motion for a prejudgment remedy of replevin, as well as from defense counsel's bad faith conduct in connection with Plaintiff's attempts to replevy the historical items.

　　　For the reasons set forth below, Plaintiff's motion for contempt against defendant Baribault is **denied** and Plaintiff's motion for sanctions against Attorney Read is **granted**.

## I.　　BACKGROUND

　　　Plaintiff is the current owner of a Revolutionary War-era property in Canterbury, Connecticut that was previously owned by Baribault. (Pl. Mem., ECF No. 160-1, at 1–2.) In 2017, while Baribault was the owner of the property, she defaulted on her mortgage loan and

Bank of America, N.A. foreclosed its mortgage on the premises. (*Id.* at 2–3.) Prior to surrendering possession of the property, Baribault "proceeded to strip the premises of fixtures." (*Id.* at 3 (internal citations omitted).) Plaintiff acquired the property (without the missing fixtures) in July 2019. (*Id.* at 4.) He subsequently commenced the instant action for replevin, seeking possession of the historic fixtures that were removed from the property. (ECF No. 55.)

In April 2023, the parties met at Baribault's property to allow Plaintiff to inspect, catalog, and photograph each historic fixture. (Pl. Mem. at 5.) On May 3, 2023, Plaintiff filed a motion for a prejudgment remedy. (ECF No. 75.) On June 16, 2023, the parties filed a stipulation and attached inventory list pursuant to which Baribault agreed to replevy all the fixtures that she had shown Plaintiff during the April inspections. (ECF Nos. 105, 105-1.) The Court granted the motion for a prejudgment remedy and endorsed the stipulation on June 22, 2023. (ECF Nos. 106, 107.)

On July 14, 2023, a moving company hired by Plaintiff transported the agreed-upon fixtures from Baribault's property to Plaintiff's. (Pl. Mem. at 7.) After the movers unloaded the truck at Plaintiff's property, Plaintiff discovered that seven pieces of woodwork were missing. (*Id.* at 8.) Plaintiff notified defense counsel about the missing fixtures a few days later and, in response to questioning at her deposition in October 2023, Baribault testified that she did not have anything left to replevy. (*Id.* at 9 (internal citation omitted).) Plaintiff repeatedly contacted Baribault's counsel regarding the seven pieces over the next few months but did not receive an answer to his request that Baribault replevy the missing fixtures. (*Id.* at 10.)

Plaintiff filed the instant motion on February 4, 2024. (ECF No. 160.) Baribault opposed on March 6, 2024 (ECF No. 167), and Plaintiff filed a reply on March 13, 2024. (ECF

No. 168.) The Court held an evidentiary hearing on Plaintiff's motion for contempt on April 1, 2024. (ECF No. 178.)

## II.   <u>LEGAL STANDARDS</u>

### A.   Civil Contempt

The Court has "inherent power to enforce compliance with [its] lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966).[1] A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Regarding the first element, an order is clear and unambiguous if it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989). As to the second element, the burden of establishing contemptuous conduct is borne by the moving party, *Latino Officers Ass'n of City of N.Y., Inc. v. City of N.Y.*, 558 F.3d 159, 164 (2d Cir. 2009), and "[i]n the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred," *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). However, the party seeking the contempt order need not establish that the violation was willful. *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984).

"Unlike sentences for criminal contempt, which are punitive in nature and intended to vindicate the authority of the court, the sanctions for civil contempt serve two purposes: to

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). The Second Circuit "has commented that, so far as the first of these functions is concerned, the district judge, sitting in equity, is vested with wide discretion in fashioning a remedy. The compensatory goal, by contrast, can only be met by awarding to the plaintiff any proven damages. The district court in either case may award appropriate attorney fees and costs to a victim of contempt." *Id.* Moreover, "th[e] inherent power to enforce a consent judgment extends beyond the remedial contractual terms agreed upon by the parties." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016).

### B.       Sanctions Against Counsel

The Supreme Court has held that federal courts have the "inherent power" to impose sanctions when a party or its counsel acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). A court in the Second Circuit may impose sanctions if it finds, with a high degree of specificity in its factual findings, that there is clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes. *Schaffer Nance & Co. v. Estate of Andy Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *Milltex Indus. Corp. v. Jacquard Lace Co. Ltd.*, 55 F.3d 34, 38 (2d Cir. 1995); *Olivieri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). A court may exercise its inherent power against counsel and parties where "parties clearly acted in bad faith or conducted themselves dishonestly." *Kensington Int'l Ltd. v. Congo*, 03-CV-4578 (LAP), 2007 WL 2456993, at *6 (S.D.N.Y. Aug. 24, 2007). Assuming the necessary factual predicate, courts may sanction parties, attorneys, or law firms by dismissing actions, assessing attorneys' fees, imposing monetary penalties, or fashioning other

appropriate sanctions "for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 45.

### III.   <u>DISCUSSION</u>

**A.   Evidence Shows that Baribault Failed to Comply with a Clear and Unambiguous Order**

In adopting the parties' stipulation to resolve Plaintiff's motion for a prejudgment remedy, the Court entered a clear and unambiguous consent order. (ECF No. 107.) "[A party] may only be held in contempt if it violated a clear and unambiguous order that left no doubt in the minds of those to whom it was addressed." *Drywall Tapers & Pointers v. Local 530*, 889 F.2d 389, 395 (2d Cir. 1989). A "clear and unambiguous" order is one that is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Terry*, 886 F.2d at 1352.

Here, the stipulation endorsed by the consent order explicitly provides that Plaintiff was to retrieve the inspected historic fixtures enumerated in the attached inventory list (ECF No. 105-1) from Baribault's property and that if "any of the inspected historic fixtures are left behind on Baribault's premises, the defendants shall deliver the remaining fixtures to the plaintiff at their own expense." (ECF No. 107 at 2.) By agreeing to the stipulation, Baribault was required to produce all historic fixtures listed in the inventory, including the seven fixtures Plaintiff contends are missing. The language of the stipulation/consent order is plain and direct regarding the categories of items at issue. What is more, counsel for defendants conceded that whether the order is clear and unambiguous is "not an issue" at the evidentiary hearing.

Next, proof of Baribault's noncompliance is clear and convincing. The stipulation accounts for all fixtures (except for modern reproduction window sashes) that Plaintiff

inspected on Baribault's property in April 2023 as per the record and testimony provided by Plaintiff's husband, Matthew Means. (Pl. Mem. at 6; ECF No. 105 at 2; Pl. Decl., ECF No. 160-2 ¶ 33.) Accordingly, the missing fixtures were, or should have been, in Baribault's possession at the time the stipulation was filed and when Plaintiff's movers arrived at Baribault's property to transport the fixture to Plaintiff's property.

While Baribault contends that the missing fixtures could have been misplaced by Plaintiff (Def. Opp., ECF No. 167, at 2), photographs provided by one of the movers, Edgardo Gutierrez, from the day of the move demonstrate that the missing fixtures were not laid out as part of the inventory to be moved to Plaintiff's property. (ECF No. 160-9, Exs. 1–11.) Gutierrez also declares that the movers "loaded *everything* onto the truck." (*Id.* ¶ 3 (emphasis added).) Means further testified that he assisted with unloading the moving truck at the Canterbury property and searched for the missing items as soon as Plaintiff discovered that they did not receive them as part of the move. Plaintiff similarly testified, "I determined that the items – the seven items in dispute hadn't been replevied within 72 hours of the movers leaving the property."

Thus, the evidence is convincing that Plaintiff never received the missing fixtures to begin with, and to date, Baribault has not been able to confirm, with concrete evidence, that she has provided the remaining woodwork to Plaintiff. (Pl. Mem. at 10; Pl. Decl. ¶¶ 46–47.)

Defendants' own affidavits further corroborate the conclusion that the items at issue were provided to Plaintiff. Baribault admits that some items were not returned to Plaintiff after the move. (Baribault Aff., ECF No. 167-1 ¶ 8.) Baribault's boyfriend and co-defendant Michael Durvin states that he oversaw the move and used the "Inventory as a list to make sure that everything was returned as ordered and had the movers sign the list as a receipt." (Durvin

Aff., ECF No. 167-2 ¶ 7.) However, Durvin testified during the evidentiary hearing that he sometimes checked off items on the inventory list and sometimes did not during the move, which convinces the Court that the seven missing fixtures, along with numerous other items, were *not* collected by the movers, as these items were not checked off on the inventory list. (*See id.* at 5-10.) Therefore, the proof weighs in favor of finding that Baribault did not fully comply with the consent order, by failing to provide Plaintiff with the seven missing items.

### B.    Baribault Diligently Attempted to Comply with the Consent Order

Although the first two elements of civil contempt are satisfied, Baribault has diligently attempted to comply with the consent order. Plaintiff notified Baribault's counsel of the missing fixtures within three days of the move. (Pl. Decl. ¶ 40). Although Baribault was not present for the move (Baribault Aff. ¶ 7), she "later learned that [] [she] had returned some items that were not covered by the order and that there were some items that were not returned." (*Id.* ¶ 8.) She further swore that any information regarding the "after-discovered" items was conveyed to Plaintiff by her attorney "upon information and belief," and that, "to the best of [her] knowledge," she has delivered all the fixtures to Plaintiff. (*Id.* ¶¶ 8, 9.) Baribault reiterated this during her testimony; she stated that within a day of receiving notice from her counsel that Plaintiff had contacted counsel regarding the missing items, she searched for the items and notified her counsel of the same, and that she has nothing left in her possession to replevy. Durvin similarly testified that he assisted Baribault with the search for the missing items and looked for them in and around the barn and in the field. Therefore, the Court finds that this is sufficient to demonstrate that Baribault made diligent efforts to comply with the consent order, especially since all but seven items on the inventory list have been replevied. *See Nike, Inc. v. Wu*, No. 13-CV-8012 (CM), 2020 WL 257475, at *25 (S.D.N.Y.

Jan. 17, 2020) (holding that nonparties could not be held in contempt "as long as they made diligent and energetic efforts to comply in a reasonable manner with the . . . Orders"), *aff'd sub nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175 (KMW), 2021 WL 3418475, at *5 (S.D.N.Y. Aug. 5, 2021) (explaining that the Second Circuit "has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case" and citing cases).

Accordingly, Plaintiff's motion for contempt against defendant Baribault is denied.

### C.     Sanctions are Warranted Against Attorney Read for Failure to Comply with Connecticut Rule of Professional Conduct 3.4(6)

"A court must make a finding of lawyer misconduct before it considers imposing a sanction." *Haye v. Ashcroft*, No. 01-CV-414, 2004 WL 1936204, at *3 (D. Conn. Aug. 27, 2004). In imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standards for Imposing Lawyer Sanctions 3.0 (1986). Plaintiff contends that Attorney Read's conduct implicates Rule 3.4(6) of the Connecticut Rules of Professional Conduct, which provides that an attorney "shall not . . . [r]equest a person other than a client to refrain from voluntarily giving relevant information to another party." Specifically, Plaintiff represents that, on more than one occasion, Attorney Read instructed a non-party witness, David Izzo, to refrain from speaking or cooperating with Plaintiff. (Pl. Mem. at 22.) As a result, Izzo ceased to voluntarily cooperate with Plaintiff in or around August 2022, forcing Plaintiff to conduct a deposition months later instead. (*Id.*)

Plaintiff's documentary evidence supports his request for sanctions. On August 17, 2022, Attorney Read emailed Izzo, "I cannot and will not tell you what do, but *I would personally appreciate it if you would not speak or communicate with Mr. Raleigh*." (ECF No. 160-2 at 101 (emphasis added).) Again, on November 15, 2022, Attorney Read emailed Izzo, "*I can tell you that I would appreciate it if you would not help Mr. Raleigh in any way.*" (*Id.* at 104.) And while Izzo's November 19, 2022 affidavit declares that Attorney Read told him he did not have to speak with Plaintiff "if [he] did not want to," the Court notes that said affidavit was sworn to before Attorney Read himself, days after he requested Izzo via email to not talk to Plaintiff. (ECF No. 160-8 at 4.)

The Court finds that the statements in Attorney Read's emails clearly amount to "requests" to a non-party witness "to refrain from voluntarily giving relevant information to another party" in violation of Connecticut Rule of Professional Conduct Rule 3.4(6). It is apparent that Attorney Read acted in bath faith and violated an ethical duty to prevent Plaintiff from gathering pertinent facts to support his case. *See, e.g.*, *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993) (upholding the district court's imposition of sanctions where it found that defense counsel attempted to dissuade a non-party witness from giving testimony). There is no evidence to suggest that he was not of sound mind or there were aggravating or mitigating factors to excuse counsel's conduct. Any purported justification for Attorney Read's misconduct is completely without merit, thus convincing the Court to conclude that his actions were entirely without color. Accordingly, the Court, pursuant to its inherent power, sanctions Attorney Read in the amount of $1,130.77, the amount incurred by Plaintiff to conduct Izzo's deposition.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for contempt against defendant Baribault is **DENIED** and Plaintiff's motion for sanctions against Attorney Read is **GRANTED**. Attorney Read is **ORDERED** to pay Plaintiff sanctions in the amount of **$1,130.77** within sixty (60) days of this Order.

**SO ORDERED.**

Hartford, Connecticut
April 4, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge